IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Leroy Folkes,                     ) | Civil Action No. 8:10-22-HMH-BHH |
|                      ) | |
|           Plaintiff,   ) | |
|                      ) | |
|     vs.               ) | **REPORT AND RECOMMENDATION** |
|                      ) | **OF MAGISTRATE JUDGE** |
| Lt. Wade Byrd; Sgt. Wright;   ) | |
| Ms. Carwile; Ms. Jackson;    ) | |
| Capt. Wade; Ofc. McKnight;   ) | |
| and Sgt. Springer, all in his or   ) | |
| her individual capacities,     ) | |
|                      ) | |
|          Defendants.  ) | |
| _____ ) | |

The Plaintiff, a state prisoner proceeding *pro se*, filed this action on December 30, 2009, seeking relief pursuant to 42 U.S.C. § 1983.[1] This matter is before the Court on the Defendants' Motion for Summary Judgement. (Dkt. # 46.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On August 16, 2010, the Defendants filed a Motion for Summary Judgment. (Dkt. # 46.) On August 17, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible

---

[1]The envelope in which the complaint was mailed was stamped by the Perry Correctional Institution mailroom as having been received on December 30, 2009. Therefore, pursuant to *Houston v. Lack,* this action was filed on December 30, 2009. *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

consequences if he failed to adequately respond to the motion. On September 2, 2010, the Plaintiff filed a response opposing the Defendants' Summary Judgment Motion. (Dkt. # 52.)

### FACTS

In his Complaint, the Plaintiff states that he has a serious mental health illness and he alleges that he has not received the proper mental health care while incarcerated at the Perry Correctional Institution ("PCI"). He states that budget cuts have resulted in inadequate mental health care and improperly trained staff and that inmates in the SMU at PCI are subjected to not being diagnosed or properly treated for mental illnesses.

In addition to the Plaintiff's general allegations regarding the mental health care at the PCI, the Plaintiff also makes allegations about a specific incident at the PCI. The Plaintiff alleges that on May 11 and 12, 2009, when he asked the Defendants Jackson and Carwile for counseling, they ignored his requests. (Compl. at 3.) The Plaintiff states that he cut his arms "deep and long" on May 12th in an attempt to rid himself of poison which he alleges the security officers placed in his food. (Compl. at 3-4.) He states that he would not have cut himself if the Defendant Jackson or any other mental health care professional had helped him with the poison. (Compl. at 3.) He further states that the Defendant Jackson falsified his mental health records by stating in the records that she saw him on May 12th. *Id.*

He states that ten minutes after he cut himself, at approximately 8:15 p.m. he was removed from his cell and placed in restraints. (Compl. at 4.) He states that he was taken up front and the security officers carelessly wrapped his arms and did not seek medical attention for him in an effort to save money because the medical personnel had left for the day. (Compl. at 4.) The Plaintiff alleges he was placed in a holding cell in restraints for two hours and then placed in a restraining chair during which time he states he continued to bleed. He

2

alleges that four hours later, the Defendants Sgt. Wright and Lt. Byrd and two wing officers entered his cell and began to beat him. (Compl. at 5.) He states that when he was removed from the chair, blood was all over the restraints and holding cell. He states he was placed back into his assigned cell. *Id*.

The Plaintiff alleges he cut himself for a third time on May 14, 2009, and that he was taken out of his cell in restraints and the Defendant Byrd "recklessly wrapped" the Plaintiff's injuries without cleaning or dressing them. (Compl. at 5.) He states that his wounds were "never cleaned and dressed until 9:30 pm on 5/15/09, the next morning." (Compl. at 5.) He states that the Defendant Byrd was playing doctor in an attempt to save money knowingly risking the Plaintiff's life and health. *Id.*

The Plaintiff specifically sets out the claims he is raising in his Complaint: 1) conspiracy; 2) gross negligence; 3) malpractice; 4) assault and battery; and 5) outrage. (Compl. at 9.) In his response to the Defendants' Summary Judgment Motion, the Plaintiff clarified his assault and battery claim is one for excessive force. (Pl.'s Mem. Opp. Summ. J. Mot. at 1.) The undersigned notes that the Defendants also treated the Plaintiff's claim of assault and battery as one for use of excessive force and the malpractice claim as one for the denial of medical treatment in their summary judgment motion. The plaintiff is seeking actual and punitive damages and "appropriate injunctive relief." (Compl. at 10.)

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

> issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the nonmoving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**DISCUSSION**

In the Plaintiff's Memorandum Opposing the Defendants' Summary Judgment Motion, the Plaintiff attempts to add claims regarding being striped naked and left for days in a cold room without property and hygiene supplies. (Pl.'s mem. Opp. Summ. J. Mot. at 2.)  These claims were not raised in the Plaintiff's Complaint, and the Plaintiff has not sought to amend his complaint to add such claims.  Therefore, these claims are not properly before this court.

**Exhaustion of Administrative Remedies**

The Defendants contend that the Plaintiff did not exhaust his administrative remedies prior to filing this action.  The undersigned agrees that the Plaintiff failed to exhaust his administrative remedies as all of his claims, except for his claim of medical difference against the non-medical Defendant Byrd, as discussed below.

Exhaustion of administrative remedies prior to bringing a federal lawsuit is required by 42 U.S.C. § 1997e(a) (stating "No action shall be brought with respect to prison conditions under Section 1983 of this Title or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"). A prisoner has not exhausted all of his administrative remedies by "failing to follow the required steps so that remedies that once were available to him no longer are." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Exhaustion requires that the prisoner utilize all available procedures so that prison officials have the opportunity to remedy the situation administratively.  *Id.*

In order to exhaust the South Carolina Department of Corrections ("SCDC") administrative remedies, an inmate must fill out a Form 10-5 or Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance

Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under § 1983. 42 U.S.C. § 1997e.

The Defendants acknowledge that the Plaintiff filed a Step 1 grievance on May 20, 2009, regarding the medical indifference claims he alleges against the non-medical security staff, Byrd, on May 12 and 14, 2009. Prison officials responded on October 6, 2009, and the Plaintiff then filed a Step 2 grievance on October 9, 2009. (Defs.' Mem. Supp. Summ. J. Mot. Attach # 3 - Jimmy Simmons' Aff. Ex. A.) The Defendants argue that a response has not been rendered on the Plaintiff's Step 2 grievance and, therefore, the Plaintiff did not exhaust his administrative remedies on this claim before filing this action. However, as stated above, a responsible official has 60 days to respond to a Step 2 grievance. The Plaintiff filed this action on December 30, 2009, after the time for a response to his Step 2 grievance had elapsed. When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA. *See Boyd v. Con. Corp. of America*, 380 F.3d 989, 996 (6th Cir. 2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); *Jernigan v. Stuchell*, 304 F.3d

1030, 1032 (10th Cir. 2002) (holding "we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); *Lewis v. Washington*, 300 F.3d 829, 333 (7th Cir. 2002) (agreeing that administrative remedies are deemed exhausted under the PLRA when prison officials fail to respond to inmate grievances); *Foulk v. Charrier*, 262 F.3d 637, 698 (8th Cir. 2001) (holding "once [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Accordingly, the undersigned declines to find the Plaintiff has failed to exhaust his administrative remedies on his claims against the security staff defendants for incidents alleged to have occurred on May 12 and 14, 2009.

As to the Plaintiff's claims that he has not received adequate mental health treatment, the Defendants acknowledge the Plaintiff filed a Step 1 grievance on November 23, 2009, and the record shows that the Warden responded on December 28, 2009. (Defs.'s Mem. Supp. Summ. J. Mot. Attach. # 3 - Simmons' Aff. Ex. B.) It appears, however, the Plaintiff did not receive the Warden's response to his Step 2 grievance until February 2, 2010. *Id.* As the Plaintiff filed this action on December 30, 2009, he filed this action prior to the time for the officials to respond had elapsed and prior to exhausting his administrative remedies. Accordingly, the Plaintiff's claim regarding the denial of mental health treatment was not exhausted prior to his bringing this action.[2]

---

[2]The undersigned notes that reviewing the Plaintiff's medical records, it is clear that the Plaintiff has received adequate medical and mental health care at the PCI. The Plaintiff's medical records show the Plaintiff has been treated for self-inflicted injuries on

As for the excessive force claims, the Defendants contend that the Plaintiff did not exhaust his administrative remedies. The undersigned agrees. The Defendants state that the Plaintiff filed a Step 1 grievance, but it was returned to the Plaintiff for failure to follow the grievance procedures. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 3- Simmons' Aff. ¶ 14.) In response, the Plaintiff states that he submitted requests to staff and complaints to grievance personnel but these were refused by "time and limitations." (Pl.'s Mem. Opp. Summ. J. Mot. at 3.) He further states that he has submitted Step 1 and 2 grievances but that "they violated the statute of limitations clause under the grievance policy . . . " *Id.* Clearly, the Plaintiff did not follow the grievance procedures properly and therefore the Plaintiff did not properly exhaust his administrative remedies as to these claims. *See Jones v. Bock,* 549 U.S. 199, 217-218 (2007) (stating that the exhaustion requirement is "not satisfied when grievances were dismissed because prisoners had missed deadlines set by the grievance policy") (internal citation omitted). *See also Muhammad v. Berry,* 198 Fed.Appx. 738 (10th Cir. 2006) (holding because prisoner failed to properly follow the prison's grievance procedure, he did not exhaust his administrative remedies).

**Medical Indifference Claim against the Defendant Byrd**

The Plaintiff alleges that Defendant Byrd was deliberately indifferent to his medical needs. In his Complaint, the Plaintiff alleges that his self-inflicted wounds were not properly

---

numerous occasions, prescribed medication, routinely seen by mental health personnel, and transferred for in-patient care at Gilliam Psychiatric Hospital when needed. *See, e.g., Reed v. Marshall,* 1993 WL 372255 at *3 (N.D. Cal. 1993)(holding that medical records showed as a matter of law that defendants were not deliberately indifferent to inmate who complained that, despite repeated requests, he had been denied adequate medical and psychiatric treatment).

treated by the non-medical Defendant Byrd. The Defendant Byrd contends that the Plaintiff has failed to establish such a claim. The undersigned agrees.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id*. The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id*. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id*. at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir.1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or

9

permanent loss.'" *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Further, mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. *Estelle,* 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); *see also Wright v. Collins,* 766 F.2d 841, 849 (4th Cir. 1985).

Additionally, the Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier,* 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

As stated above, the Plaintiff alleges that his self-inflicted wounds were not properly treated by the Defendant Byrd. The record before the Court clearly shows the Plaintiff was treated with first aid to stop the lacerations from bleeding and the on-call medical staff was notified. (Defs.' Mem. Supp. Summ. J. Mot. Attach # 4- Wade Byrd Aff. Ex. ¶ 11-12.) When the medical staff was notified of the Plaintiff's self-inflicted wounds, the Defendant Byrd was told that the Plaintiff did not need to be sent out for emergency medical care and he would be checked on in the morning by the medical staff. *Id.* ¶ 12. The Plaintiff has not shown that the

injuries he inflicted on himself on May 12th ever required more extensive treatment than what he received from the Defendant Byrd or that any delay in being seen by the medical staff caused him 'to suffer a life-long handicap or permanent loss.'"   The record establishes that the Plaintiff was provided with appropriate medical care.   Furthermore, as noted above, prison personnel may rely on the opinion of the medical staff as to the proper course of treatment.   At best, the Plaintiff has merely alleged that he disagreed with the treatment he received. However, as stated above, disagreements over medical treatment do not amount to a constitutional violation.   Accordingly, the non-medical Defendant Byrd should be granted summary judgment on the Plaintiff's claims of medical indifference.

**Conspiracy Claim**

The Plaintiff also asserts a cause of action for conspiracy.   To the extent, this may have been included in the Plaintiff's completed grievance, the undersigned recommends this claim be dismissed for failure to state a claim.   "To establish a civil conspiracy under § 1983, [the plaintiff] must present evidence that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [his] deprivation of a constitutional right." *Marshall v. Odom,* 156 F.Supp.2d 525, 532 (D.Md. 2001) (*citing Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 421 (4th Cir. 1996)). To meet the "weighty burden to establish a civil rights conspiracy[,]" . . . . "[the plaintiff] must come forward with specific circumstantial evidence that each member of the alleged conspiracy shared the same conspiratorial objective."   *Hinkle,* 81 F.3d at 421.   A conclusory allegation of a conspiracy is insufficient to state a claim. *See Boddie v. Schnieder,* 105 F.3d 857, 862 (2nd Cir.1997) (finding unsupported claim of conspiracy fails to state claim).   Here, the Plaintiff has failed to allege any facts to support a conspiracy claim.   Accordingly, this claim should be dismissed.

**State Law Claims**

Having recommended dismissal of the Plaintiff's federal claims, it is further recommended that the Court should decline to exercise supplemental jurisdiction over the Plaintiff's state law claims of outrage.[3]  *See* 28 U.S.C. § 1367(c).

Based on the foregoing, it is recommended that the Defendants' Motion for Summary Judgment (Dkt. # 46) be GRANTED and the Complaint be Dismissed with Prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

October 21, 2010
Greenville, South Carolina

**The Plaintiff's attention is directed to the important notice on the next page.**

---

[3]The tort of outrage is the term, under South Carolina law, for the intentional infliction of emotional distress.  *Ford v. Hutson,* 276 S.E.2d 776 (S.C. 1981).